FILED

2010 Jun-30  PM 01:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, and UNITED MINE WORKERS OF AMERICA, LOCAL 8982,** | ) ) ) ) ) ) | Civil Action Number **2:09-cv-1182-AKK** |
| Plaintiffs, | ) ) | |
| **vs.** | ) ) | |
| **OAK GROVE RESOURCES, LLC,** | ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Presently before the court is Plaintiffs United Mine Workers of America, International Union's ("UMWA"), and United Mine Workers of America, Local 8982's (collectively "Plaintiffs") Motion for Summary Judgment, doc. 21, and Defendant Oak Grove Resources, LLC's ("Defendant") Motion for Summary Judgment, doc. 23.  The parties have responded, docs. 26 and 27, and Defendant has replied, doc. 28.  Accordingly, this matter is ripe for this court's review.

Plaintiffs' motion for summary judgment asks this court to set aside

Arbitrator Thomas Phelan's ("Phelan") May 28, 2009, award denying punitive and special damages, arguing that it violated the Collective Bargaining Agreement ("CBA") by not applying *res judicata* to Arbitrator Larry Roberts' ("Roberts") earlier award.  Defendant's motion requests that the court affirm Phelan's award. For the reasons discussed fully below, Defendant's motion is GRANTED, Plaintiffs' motion is DENIED, and this action is DISMISSED, with prejudice.

## I.  BACKGROUND

The material facts are undisputed.  Plaintiffs represent bargaining unit employees at Defendant's Oak Grove Mine and Concord Preparation Plant ("Prep Plant").  The parties are signatories to a 2007 CBA that governs employment terms and conditions, including grievance and arbitration proceedings.  Doc. 31-34. U.S. Steel Mining Company ("U.S. Steel") previously owned Oak Grove Mine, doc. 34-13 at ¶ 3, and signed a CBA with UMWA on January 1, 2002, doc. 33-26. Grievance No. 89-1

In March 1989, when U.S. Steel owned and operated the Oak Grove Mine and Prep Plant, Plaintiffs filed Grievance No. 89-1 on behalf of several bargaining unit members alleging that U.S. Steel violated the CBA by using outside labor to clean up coal spillage from a conveyor belt near the Prep Plant.  Doc. 33-2 at 3.  In his October 30, 1989, award, Phelan agreed and held that U.S. Steel violated

Article IA, Section (a) of the CBA because the work fell within the exclusive jurisdiction of the bargaining unit. *Id*. at 10. Thereafter, Plaintiffs and U.S. Steel (and later Oak Grove) agreed that the company could perform coal cleanup by allowing an outside contractor to provide the vacuum truck, "while bargaining unit members operated the vacuum and performed the cleanup work." Doc. 34-24 at 9; doc. 31-2 at 24 (dep. at 89-91). From 1989 through 2006, the Union filed grievances regarding the number of bargaining unit employees assigned to coal cleanup work. Doc. 1 at 11, Ex. A. The parties usually settled those grievances at step 1 of the grievance process. *Id*.

Defendant purchased Oak Grove Mine and the Prep Plant from U.S. Steel in 2003.[1] Doc. 31-1 at 15 (dep. at 54-55). Defendant agreed to the terms and conditions of the January 1, 2002, CBA previously executed between U.S. Steel and Plaintiffs. Doc. 34-13 at 3, ¶ 3; doc. 33-26.

Grievance No. 06-11

In 2006, Plaintiffs filed Grievance No. 06-11 regarding the use of outside contractors for coal spillage cleanup, which stated:

> Company or Management is in violation of Article I-A Section (A) [sic] and/or any other that may pertain. Using contractors to clean

---

[1] UMWA Local 2133 represents Oak Grove Mine bargaining unit members and UMWA Local 8982 represents the Prep Plant bargaining unit members. Doc. 31-1 at 15 (dep. at 54).

> coal spillage in slope belt area.  Asking to cease and desist and to be made whole in every way.  Work done on 1-15-06  1-16-06.

Doc. 34-23 at 2.  The parties processed this dispute through the grievance procedure and, without settlement, referred it to arbitration.  Prior to the arbitration hearing before Roberts on May 26, 2006, Defendant negotiated a settlement that resulted in reimbursement to the affected bargaining unit members for the work performed by the outside contractor.  *Id*. at 3-4.  Although the CBA clearly states that grievances at steps 2 or 3 require a written settlement, Defendant asserted that the payments to the bargaining unit employees settled the grievance, and declined to appear at the scheduled arbitration hearing.  *Id.*  As a result and without objection from Defendant, Roberts proceeded with an *ex parte* hearing.  *Id*. at 4-5.

On June 28, 2006, Roberts found for the Union, holding that the coal spillage cleanup was in the exclusive jurisdiction of the bargaining unit members.  *Id*. at 11.  Further, he held: "More importantly, the matter was previously settled on more than one occasion and the Union should not be caused the grief of bringing this matter to arbitration once again.  Hence the Union's argument of *res judicata* is quite applicable to the instant case."  *Id*. at 12.  Roberts ordered Defendant to "cease and desist from the utilization of a subcontractor for the purpose of removing coal spillage from any beltline within the operation unless it

is an emergency situation." *Id*. at 12-13 (emphasis in original). Lastly, Roberts held that "for the Employer to assign such work outside of the bargaining unit will be considered a direct violation of this cease and desist order and subject to punitive damages for future violations." *Id*. at 13.

In 2007, the parties entered into a new CBA, docs. 31-4 through 32-4, and National Bituminous Coal Wage Agreement[2] ("NBCWA"), doc. 34-2. The CBA provides that the "arbitrator's decision shall be final and shall govern only the dispute before him." Doc. 32-3 at 29.

Grievance No. 04-08

On March 2, 2008, Defendant refused three bargaining unit members coal spillage clean up work, and instead assigned them other duties. Doc. 33-23 at 2. On March, 5, 2008, the Union filed Grievance No. 04-08 on behalf of these bargaining unit members. *Id*. The parties settled the grievance when Defendant agreed to pay the affected bargaining unit members for additional work hours. Doc. 31-2 at 18 (dep. at 66-68).

---

[2] The 2007 National Bituminous Coal Wage Agreement ("NBCWA"), also known as the National Agreement, was "incorporated by reference and constitute the agreement between the parties." Doc. 34-2 at 3. The UMWA negotiates the NBCWA nationwide for all coal miners it represents and covers national bargaining issues such as wages, health and pension benefits, workplace health and safety, and work rules.

Grievance No. 07-08

On March 6, 2008, Plaintiff filed Grievance No. 07-08 alleging that

Defendant violated Roberts' cease and desist order by hiring contract employees

to clean up coal spillage in March 2008 (Grievance No. 04-08).  Doc. 33-1 at 2.  In

the grievance, the Union asked "to be made whole in every way and seek punitive

damages for cost to process this grievance."  *Id*.  When the parties did not settle

Grievance 07-08, Plaintiffs sought to refer the grievance to Roberts, even though

he was not listed on the panel of arbitrators.  Doc. 34-16 at 2; doc. 34-3 at 2.

On July 11, 2008, Defendant filed a Complaint to Enjoin Arbitration and for

Declaratory Judgment and an Application for Temporary Restraining Order,

seeking to enjoin Roberts from hearing Grievance No. 07-08.  Case title 2:08-cv-

1235-IPJ, (N.D. Ala. Filed July 11, 2008).  The complaint alleged that Roberts

lacked jurisdiction to hear the dispute and that he had a conflict of interest.  *Id*.,

doc. 1.  On July 17, 2008, Judge Inge Johnson granted Defendant's motion to

enjoin arbitration before Roberts, and ordered the parties to select an arbitrator

from the 2007-2008 list of arbitrators.  Doc. 34-16.  Plaintiffs filed, among other

things, a Motion to Alter Judgement, which Judge Johnson denied.  Doc. 34-20.

Plaintiffs subsequently agreed to comply with the court's order to select an

arbitrator from the approved list.  2:08-cv-1235-IPJ, doc. 28.  The matter before

Judge Johnson closed on July 17, 2008.  Doc. 34-20.

The parties jointly selected Arbitrator Marvin Feldman ("Feldman") to arbitrate Grievance No. 07-08.  *See* doc. 31-1.  During the November 13, 2008, hearing, Defendant confronted Feldman about an *ex parte* meeting he had with Union officials the night before the hearing.  *Id*. at 24 (dep. at 92).  After a rather contentious exchange, Feldman recused himself from any further proceedings.  *Id*. at 33, 35 (dep. at 125, 133).

Thereafter, the parties selected Phelan, who held a hearing on February 12, 2009.  Doc. 31-2 and 3.  At the hearing, Plaintiffs clarified their claims of punitive damages in the amount of $1,000, and special damages for the cost to Plaintiffs for compensating Mine Committee members' time off from work to meet with management for Grievance 04-08.  *See* Doc. 1, Ex. A at 16.

On May 28, 2009, Phelan denied Plaintiffs' request for punitive and special damages.  *Id*.  Phelan's opinion stated, in relevant part:

> If the parties want to authorize the award of punitive damages by arbitrators, they are always free to negotiate a provision giving arbitrators that authority.  In my view, that is a matter which is national in character within the meaning [o]f Article XXVII of the Agreement.  In the absence of such an express provision, however, any such award would have to be considered one which does not draw its essence from the collective bargaining agreement.

*Id*. at 31.  Phelan further reasoned that Roberts' award of punitive damages could

not be affirmed because (1) an award of punitive damages was "noticeably absent"
from Arbitration Review Board ("ARB") decisions under the National Agreement,
*id*. at 28, (2) the Fourth Circuit has reviewed and rejected an arbitration award of
punitive damages because the NBCWA does not expressly authorize punitive
damages and the punitive damage award issued by the arbitrator in that case did
not draw its essence from the CBA, *id*. at 30, and (3) even though the Eleventh
Circuit has allowed punitive damages, none of those cases involved the NBCWA,
*id*. at 29, and "to allow for the award of punitive damages under the NBCWA in
Alabama would mean that the (NBCWA) National Agreement is being interpreted
and applied differently in different geographic areas," which is not the intended
result, *id*. at 30-31.

Phelan denied also Plaintiffs' claims for special damages to Local Union
8982.  Phelan reasoned that, because Defendant's failure to pay punitive damages
was not a breach of the CBA, "[t]he [Union's] cost to have the Mine Committee
process its grievance was therefore not directly caused by a breach of the
Agreement and consequently could not be considered special damages which
would entitle Local Union 8982 to be compensated for those costs."  *Id*. at 31-32.

As a result of Phelan's award, Plaintiffs filed the present action on June 12, 2009.[3]

## II.  APPLICABLE LEGAL STANDARD

Arbitration is the preferred method for settling grievances regarding the application or interpretation of a CBA.[4]  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987).  A federal court's review of an arbitration award is extremely narrow, *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (citations omitted), and limited as follows in the *Steelworkers Trilogy*:[5]

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel*, 363 U.S. at 599.  "[A]s long as the arbitrator is even arguably

---

[3] The Complaint originally named Oak Grove and Cliffs North American Coal, LLC ("Cliffs") as defendants.  Doc. 1.  On August 5, 2009, Cliffs filed a Motion to Dismiss, doc. 8, which Judge Probst granted, doc. 15.  This case was reassigned to the undersigned on January 7, 2010.  Doc. 17.

[4] The Labor Management Relations Act of 1947 states:  "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."  29 U.S.C. § 173(d).

[5] *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960).

construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

A court may vacate an arbitration award if it is "irrational, [] fails to draw its essence from the collective bargaining agreement or [] exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery Workers Int'l Union Local 361*, 726 F.2d 698, 699 (11th Cir. 1984) (citation omitted).  Further, "[i]n order to prevail on its claim, [Plaintiffs] must refute every reasonable basis upon which the arbitrator may have acted." *See Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1264 (11th Cir. 1996) (citation omitted).

The Supreme Court stated in *Enterprise Wheel* that an arbitrator "is to bring his informed judgment to bear in order to reach a fair solution of a problem.  *This is especially true when it comes to formulating remedies.*"  *Enterprise Wheel*, 363 U.S. at 597 (emphasis added).  However, an arbitrator does not have unfettered discretion.  He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement.  *Id*.

## III. DISCUSSION

Plaintiffs argue that they are due summary judgment because Phelan failed to draw from the essence of the CBA when he declined to apply *res judicata* to

Roberts' award.  Specifically, Plaintiffs contend that in ARB Decision 78-24, an arbitrator interpreted the language in Article XXIII, Section (h) of the CBA, which states that arbitration awards are "final and binding on both parties,"  to mean that "arbitrators must apply the principles of *res judicata* in cases that meet the criteria."  Doc. 22 at 9-10.  Plaintiffs argue that this is such a case, doc. 22 at 11, and that Roberts' award was not "plainly and palpably erroneous," – *i.e.*, an instance of bad judgment – whereby Phelan could refuse to apply *res judicata*, *id*. at 12.  Plaintiffs contend that Defendant overlooked "the fatal flaw that Arbitrator [Phelan] simply applied his long-standing personal opinion about the remedies available [or unavailable] under the applicable contract language."  Doc. 27 at 3.  Lastly, Plaintiffs argue that Defendant breached the CBA, and as such, Phelan should have awarded them special damages and his "decision to not award special damages was thus only a logical extension of his failure to award punitive damages as the parties' CBA required through *res judicata*."  *Id*. at 15-16.

On the other hand, Defendant argues that there is no basis for overturning Phelan's award because (1) this court must give deference to Phelan's award in light of the Supreme Court's directive that courts have limited review of arbitration awards, doc. 24 at 11-13; (2) Phelan's refusal to award punitive and special damages was well-reasoned and rational, *id*. at 14, 20, did not exceed

Phelan's authority, *id.* at 20-22, and draws its essence from the CBA, *id.* at 18-20,

24; (3) *res judicata* is inapplicable because it is not mentioned in the CBA, doc. 26

at 5; and (4) even if the CBA required *res judicata*, it does not apply to Grievance

No. 07-08 because it has different facts, *id.* at 11.

A.   Limited Judicial Scrutiny of Phelan's Award.

This dispute centers around Phelan's interpretation of the CBA.  Plaintiffs

assert, without evidentiary support, that Phelan failed to properly interpret the

CBA because he failed to "consider the possibility *res judicata* could apply, or

explain why he abandoned those principles when rendering his own opinion about

whether punitive damages are appropriate."  Doc. 22 at 10-11.  Based on this

assertion, Plaintiffs argue that this court should supplant Phelan's interpretation of

the CBA with its own.

This court's review is limited to determining whether Phelan's

interpretation of the CBA is subject to court interference.  However, that decision

is not based on whether Plaintiffs, or this court, can fashion a different

interpretation of the CBA.  *United Steel Workers*, 363 U.S. at 599.  In other words,

the threshold issue is not whether this court agrees with Phelan's interpretation of

the CBA, but instead, whether Phelan was "even arguably construing or applying

the contract and acting within the scope of his authority . . . ."  *Misco*, 484 U.S. at

38.  This court can disturb Phelan's award only if it is irrational, does not draw its

essence from the CBA, or exceeds the scope of his authority.  *Butterkrust*

*Bakeries*, 726 F.2d at 699.

With those precepts in mind, the court turns first to Phelan's decision not to

award punitive damages.  Contrary to Plaintiffs' contention, Phelan undertook a

detailed analysis of the CBA, relevant case law, and previous ARB decisions as

the basis for his award.  First, Phelan considered Articles XXIII (Sections (a), (c),

(e), and (f)) and XXVII of the CBA.  Doc. 1 at 18.  As to Article XXIII, Section

(a) limits the duties of the Mine Committee to the "adjustment of disputes arising

out of this Agreement" and to settle or withdraw a grievance at step 2 before

proceeding to step 3.  *Id*.; doc. 32-3 at 26.  Section (c) outlines four steps, (1), (2),

(3), and (4), of the grievance procedure, where if the grievance is not resolved at

any step, it proceeds to the next sequential step.  Doc. 1 at 19; doc. 32-3 at 28.  In

step (1), the employee makes a complaint to his/her foreman.  *Id*.  At step (2), the

employee submits his grievance on the Standard Grievance form and the grievance

is heard by the Mine Committee and mine management.  *Id*.  At step (3), the

grievance is heard by a UMWA district representative and an employer

representative.  Doc. 1 at 19; doc. 32-3 at 29.  Lastly, if the grievance is not

resolved at step (3), step (4) requires that the district and employer representatives

refer the grievance to an arbitrator.  Doc. 32-3 at 29.

Section (e) of Article XXIII requires an expeditious resolution of disputes, to the extent possible, and that both grievant or union and the employer shall disclose the facts and CBA provisions on which they rely.  Doc. 1 at 19; doc. 32-3 at 30.  Finally, Section (f) gives employees the right to have a Mine Committee member present when discussing grievances with the foreman; likewise, the foreman may have an employer representative present.  *Id.*

As for Article XXVII, it outlines the parties' intent to settle disputes through the CBA and collective bargaining.  However, it states further that the employer authorizes the Union "to seek judicial relief without exhausting the grievance machinery, in cases involving successorship."  Doc. 1 at 20; doc. 32-3 at 33.

After addressing these CBA provisions, Phelan then noted that Grievance No. 07-08 is unique because Local 8982 is the grievant rather than an employee.  Doc. 1 at 21.  Further, according to Phelan, Article XXIII, Section (c) provides for the resolution of disputes between the employer and employee, rather than those between the Union and the employer.  *Id.* at 22.  As such, Phelan stated that the CBA is bargained for the benefit of employees who "are given rights under the collective bargaining agreement, not the Local Union."  *Id.* at 23.

Next, Phelan reviewed the five remedies available under the CBA.  He

noted that aside from these five remedies – none of which provide for punitive

damages – the CBA does not prescribe or limit the remedy an arbitrator can

impose for violations of the CBA.  *Id*. at 24-25.  Although the CBA does not

expressly limit an arbitrator's remedial powers, Phelan acknowledged *United*

*Steelworkers of America v. Enterprise Wheel & Car Corp*., where the Supreme

Court found that an arbitrator's remedial power is not unfettered, and that

arbitrators' awards must draw their essence from the CBA or the courts must

refuse to enforce them.  *Id*. at 25-26.  Phelan noted that the most common remedy

under the current CBA is an award of compensatory damages to make whole the

aggrieved party, often accompanied by a cease and desist order.  *Id*. at 26.

Phelan then cited two ARB decisions he found instructive on awarding

remedies beyond compensatory and special damages.  *Id*.  The first is ARB

Decision 78-26, which, according to Phelan, "makes it clear that the focus of a

remedy should be the 'vindication of the bargaining unit rights,'" and that "the

Board cautioned that there are different considerations that must be taken into

account before any such additional remedy is ordered."[6]  *Id*. at 27.  Secondly,

---

[6] ARB Decision 78-26 states, in relevant part, the following:

There is a further remedy in such cases and that is the one attempted by the
District Arbitrator in this case.  That is, if the evidence clearly establishes the fact
that the Employer has created a full-time job for the performance of the disputed
activity, then a remedy ordering the posting of the job for bidding is appropriate.

Phelan cited ARB Decision 78-16[7] which allows arbitrators to award special

damages "if the elements of causation and foreseeability, as well as certainty, are

established in the record of the case." *Id*. at 28.  According to Phelan, there are no

ARB decisions that indicate "that an arbitrator may properly consider punitive

damages in formulating a remedy for an established violation of the National

Agreement." *Id*.

Phelan found that arbitrators cannot award punitive damages under the CBA

because "[t]hey are not provided for in the language of the contract, it is not a

practice that has been used in the coal industry arbitrations, and I believe that it

---

> However, and this is much to be emphasized, in assessing the evidence and the
> facts in any such case, different considerations than the vindication of the
> bargaining unit rights alone now take precedence.  The principle that the
> Employer has retained the sole and exclusive right to organize its operation and to
> organize and direct the working force is of primary importance in such
> considerations.

Doc. 35-11 at 19.

[7] ARB Decision 78-49, Supplemental To Decision 78-16, states, in relevant part, the
following:

> In addition, provided there is a showing that they were 'directly caused' by the
> breach and were within the reasonable foreseeability of the parties that they would
> be caused by the breach, the aggrieved is entitled to be compensated for losses
> beyond the benefits or rights specified in the Agreement.  These are known as
> 'special damages,' and while often required to be 'specially pleaded' in formal
> litigation, such technicality is not usually required in arbitration, if the elements of
> causation and foreseeability, as well as certainty, are shown in the presentations.

Doc. 35-10 at 5.

would be destructive of the relationship between the parties if punitive damages began to be awarded by arbitrators in the coal industry." *Id*. at 29.  To further buttress his view, Phelan added that awards of punitive damages in the Eleventh Circuit have not involved the National Agreement.  *Id*.

Phelan's most compelling argument, for this court's purposes, is that under the NBCWA, punitive damages "have not withstood judicial scrutiny." *Id*. at 29-31 (citing *Island Creek Coal Co. v. District 28, United Mine Workers of Am*., 29 F.3d 126, 130 (4th Cir. 1994)), *cert. denied*, 513 U.S. 1019.  In *Island Creek*, the Union filed a grievance alleging that the company allowed non-classified/supervisory employees to perform classified work.  *Island Creek*, 29 F.3d at 128.  Finding that the company violated the NBCWA, the arbitrator ordered the company to cease and desist and "intimated that 'punitive damages' might be appropriate in the event of future violations." *Id*.  In 1988, the parties settled again the same type of grievance.  However, in 1990, when the Union filed the same type of grievance again, the arbitrator directed the employer to pay a $2,000 penalty for failure to follow the cease and desist order.  The district court vacated the penalty and the Fourth Circuit affirmed "because the NBCWA contained no express provision allowing the award of punitive damages, the punitive damage award issued by [the arbitrator] did not draw its essence from the

collective bargaining agreement, and therefore, cannot be sustained." *Island Creek*, 29 F.3d at 131.  Rejecting the union's argument that the arbitrator had the authority to award punitive damages because of the employer's violation of a cease and desist order, the Fourth Circuit stated:

> This argument, however, circumvents the issue in this case.  The question here is not whether an arbitrator can enforce a cease and desist order, but whether he can order punitive damages in the absence of an express provision in the collective bargaining agreement permitting the award of punitive damages.  Case law in this circuit has repeatedly held that an arbitrator may not award punitive damages if the collective bargaining agreement does not expressly provide for such an award, and we are not at liberty to disturb it.

*Id.*

Phelan acknowledged that the Fourth Circuit is not binding precedent here, but stated further that:

> acceptance of that argument so as to allow for the award of punitive damages under the NBCWA in Alabama would mean that the [NBCWA] is being interpreted and applied differently in different geographic areas.  I do not believe that the negotiating parties ever intended such a result and the argument must therefore be rejected.  If the parties want to authorize the award of punitive damages by arbitrators, they are always free to negotiate a provision giving arbitrators that authority. . . .  In the absence of such an express provision, however, any such award would have to be considered one which does not draw its essence from the collective bargaining agreement.

Doc. 1 at 31.

Lastly, Phelan denied Plaintiffs' request for special damages. *Id*. He reasoned that since punitive damages are not authorized by the CBA, Defendant's failure to pay cannot constitute a breach. As such, Phelan held that Plaintiffs' "cost to have the Mine Committee process its grievance was therefore not directly caused by a breach of the Agreement and consequently could not be considered special damages which would entitle Local Union 8982 to be compensated for those costs." *Id*. at 31-32.

Based on its review of Phelan's award, this court cannot find that it is irrational, failed to draw its essence from the CBA or exceeded the scope of Phelan's authority. *See Butterkrust Bakeries*, 726 F.2d at 699. Phelan's decision is thoughtful and is consistent with the bargained for interpretation of the CBA. However, even if the court felt Phelan ruled incorrectly – and it does not – the court cannot overturn the decision: "An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 670 (11th Cir. 1988); *see also United Steelworkers*, 363 U.S. at 599; *Misco*, 484 U.S. at 38. Significantly, Phelan's award was endowed with reasoning that had at its core (1) the absence of a punitive damage remedy in the CBA, (2) a lack of punitive damage awards in previous ARB decisions, and (3)

the Fourth Circuit's denial of punitive damages in a case that involved the

NBCWA.  He dedicated over twelve pages of the twenty-five page award to

interpreting the CBA, relevant ARB decisions, and case law.  He relied on

precedents interpreting the availability of punitive damages in the NBCWA.

Consequently, Phelan's award is not subject to this court's interference.

*Butterkrust Bakeries*, 726 F.2d at 699.

B.    <u>*Res Judicata*</u>

Plaintiffs' rather circuitous argument that "Phelan violated the express terms

of the CBA by not considering the effect of *res judicata*" is unpersuasive.  To

support their position, Plaintiffs rely on the following: first, Plaintiff cites Article

XXIII, Section (h) of the CBA, which provides that all arbitration awards are

"final and binding on both parties."  Doc. 22 at 9.  Second, Plaintiffs cite ARB 78-

24, which "held that the 'final and binding' language in the NBCWA means

arbitrators must apply the principles of *res judicata* in cases that meet the

criteria."[8]  *Id*. at 10.  Plaintiffs correctly acknowledge the exceptional situations

_____

[8] ARB 78-24 Synopsis of the Case states, in relevant part, the following:

3.    When a subsequent grievance arises between the same parties, at the same
      operation, on the same fact situation, and involving the same issues of
      contract interpretation and application as presented in the former grievance
      decided by the prior award, then the principle of arbitral <u>res judicata</u>, as
      explained in Part II, is to be applied and controls the award in the
      subsequent case, except for the narrow and limited situations described

outlined in ARB Decision 78-24 where the arbitrator "may feel compelled not to apply a prior award" when it is "deemed by the arbitrator to be so plainly and palpably erroneous that it should be upset."  Doc. 34-29 at 19.  Third, Plaintiffs argue that Phelan "failed to even consider the possibility *res judicata* could apply, or explain why he abandoned those principles when rendering his own opinion

---

next, even though the arbitrator would not have decided in that fashion had he been presented the prior case.

4.   Where the arbitrator is clearly and convincingly persuaded by the evidence and arguments of the parties before him that a prior award is so plainly and palpably erroneous that it should not be applied, he may refuse to apply the principle of arbitral <u>res judicata</u>.  However, unless clearly and convincingly persuaded that:

(a)   The previous award was clearly an instance of bad judgment; or

(b)   The decision was made without benefit of some important relevant facts; or

(c)   The decision was based upon an obvious and substantial error of fact or law, or a Decision of the Board has intervened with which the prior award conflicts; or

(d)   A full and fair hearing was not afforded in the prior case;

the arbitrator is bound to apply the prior award even though he would not have decided the prior case in that fashion . . . .

Doc. 34-29 at 3-4.

The court notes that Plaintiffs failed to reply to Defendant's argument that ARB 78-24's *res judicata* provision was inapplicable here because Grievances 04-08 and 07-08 involve different facts.  Doc. 26 at 11.

about whether punitive damages are appropriate," and that this failure "constitutes conclusive evidence that he ignored the explicit provisions of the CBA in favor of applying his own notions of industrial justice." Doc. 22 at 10-11.  Fourth, Plaintiffs cite *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.3d 1378, 1387 (11th Cir. 1988), in support of the proposition that the Eleventh Circuit awards punitive damages "even when they are not explicitly provided for in the applicable [CBA]." *Id.* at 13.  Finally, Plaintiffs assert that *Island Creek* "does not govern proceedings in this jurisdiction." *Id.* at 14.

Plaintiffs' contentions are unpersuasive.  Phelan explained why he abandoned Roberts' award of punitive damages, as discussed, *supra.*  His determinations that punitive damages are not warranted because they are not an available remedy under the CBA, that they are inconsistent with the practice of the coal industry, and that it would be "destructive of the relationship between the parties," are rational conclusions in light of his analysis.  *See* Doc. 1 at 29.  For those reasons, the court disagrees with Plaintiffs that Phelan applied his own notions of industrial justice.

Moreover, Plaintiffs' reliance on *Bonar* is misplaced.  In *Bonar*, although paragraph 17 of the customer agreement contained a choice of law provision stating that the laws of the State of New York, which prohibits arbitrators from

awarding punitive damages, governed, the parties in *Bonar* incorporated the American Arbitration Association Commercial Arbitration Rules ("Commercial Rules") into the customer agreement by selecting the American Arbitration Association as the forum. *Bonar*, 835 F.2d at 1386. Section 42 of the Commercial Rules states that an arbitrator can award "any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties." *Id*. Citing *Willoughby Roofing & Supply Co., Inc. v. Kajima Int'l, Inc.*, 598 F. Supp. 353, 358 (N.D. Ala. 1984), the court held that in light of the Arbitration Act and federal policy that "'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration,' we must give precedence to the contract provisions allowing punitive damages." *See Bonar*, 835 F.2d at 1387 (citations omitted). Further, the court stated that under *Willoughby*, "the addition of the choice of law provision does not deprive the arbitrators of their power to award punitive damages."[9] *Id*.

Here, unlike *Willoughby* and *Bonar*, there is no provision or arbitration rule incorporated by reference authorizing punitive damages. Moreover, these cases are distinguishable also because they did not involve an interpretation of the

_____

[9] The *Bonar* court also reasoned that "the Arbitration Act would not override a clear provision in a contract prohibiting arbitrators from awarding punitive damages." *Bonar*, 835 F.2d at 1387 n.16 (citation omitted).

NBCWA.  Therefore, *Bonar* is not instructive.

Lastly, Plaintiffs attempt to distinguish *Island Creek* on the basis that it "does not govern proceedings in this jurisdiction," and that the Fourth and Eleventh Circuit "law differs, while the contract interpretation does not."  Doc. 22 at 14.  That argument fails also.  *Island Creek* is instructive because it mirrors the facts presented here and the Fourth Circuit is persuasive precedent.  Further, *Island Creek* is not inconsistent with *Bonar* or *Willoughby* since those cases involved a contractual provision, incorporated by reference, that allowed punitive damages.[10]  In sum, these facts do not authorize this court to upset Phelan's well-reasoned interpretation of the CBA.

The court notes that the Supreme Court has stated that "[b]ecause the authority of arbitrators is a subject of collective bargaining, . . . the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator."  *W.R. Grace & Co. v. Local Union 759, Int'l*

---

[10] Indeed, the Supreme Court has recognized that the failure to apply *res judicata* to prior awards does not impair the dispute resolution process.  *See Metro. Edison Co. v. Nat'l Labor Relations Bd.*, 460 U.S. 693 (1983) ("During the history of collective bargaining between these two parties, however, there were only two arbitration decision that imposed a higher duty on union officials.  We do not think that two arbitration awards establish a pattern of decisions clear enough to convert the union's silence into binding waiver.  This is especially so in light of the provision in the bargaining agreement that '[a] decision [by an arbitrator] shall be binding . . . for the term of *this* agreement.' [] (emphasis added).  We conclude that there is no showing that the parties intended to incorporate the two prior arbitration decisions into the subsequent agreement.").

*Union of Rubber Workers*, 461 U.S. 757, 765 (1983); *see also Metro. Edison Co.*

*v. Nat'l Labor Relations Bd.*, 460 U.S. 693, 708-709 (1983) ("And we do not

doubt that prior arbitration decisions may be relevant - both to other arbitrators

and to the Board - in interpreting bargaining agreements.  But to waive a statutory

right the duty must be established clearly and unmistakably.  Where prior

arbitration decisions have been inconsistent, sporadic, or ambiguous, there would

be little basis for determining that the parties intended to incorporate them in

subsequent agreements.").  Further, the Eleventh Circuit held:

> This severely circumscribed judicial role does not allow courts
> to impose rules of precedent or to deprive arbitrators of jurisdiction to
> decide matters of contract interpretation.  On the contrary, the federal
> policy of judicial non-interference and preservation of the dignity of
> the arbitral process requires that the development and imposition of a
> binding "law of the contract" be achieved by the arbitral system itself,
> not the courts.
>
> * * * *
>
> We protect the finality of the award in a *res judicata* sense by
> upholding it on the merits and requiring that it be enforced, but
> whether or not the award is "final" in a stare decisis sense is an issue
> for further arbitration.

*Int'l Bhd. Of Elec. Workers, Local Union No. 199 v. United Telephone Co. Of*

*Fla.*, 738 F.2d 1564, 1571-72 (11th Cir. 1984); *see also New Orleans S.S. Ass'n v.*

*Gen. Longshore Workers, Local 1418*, 626 F.2d 455, 468 (5th Cir. 1980)

("Whether there is a 'law of the contract' between the parties once an arbitrator

decides an issue and what effect, if any, is to be given precedent are not primarily,

if at all, question for judicial resolution.").

Similarly, other circuits have held that it is the arbitrator who determines whether a prior arbitral award has preclusive effect. *Int'l Union v. Dana Corp.*, 278 F.3d 548, 557 (6th Cir. 2002) ("absent a contractual provision to the contrary, the preclusive effect of an earlier arbitration award is to be determined by the arbitrator."); *Gen. Comm. Of Adjustment, United Transp. Union, W. Md. Ry. Co. v. CSX R.R. Corp.*, 893 F.2d 584, 593 n.10 (3d Cir. 1990), quoting *Butler Armco Indep. Union v. Armco Inc.*, 701 F.2d 253, 255 (3d Cir. 1983) ("absent contractual language to the contrary, one arbitrator's interpretation of a collective bargaining agreement is not binding on a subsequent arbitrator"); *Bhd. Of Maint. Of Way Employees v. Burlington N.*, 24 F.3d 937, 940 (7th Cir. 1994) ("In the world of labor arbitration, the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider.") (citations omitted); *Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Rest. Employees Union, Local 25*, 963 F.2d 388, 390 (D.C. Cir. 1992) ("where the agreement is silent, the 'arbitrator may decline to follow arbitral precedent when his judgment is that earlier decision are erroneous.'") (citations omitted); *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 280 (1st Cir. 1983) ("Absent a contractual provision to the contrary, an arbitrator is free to decide that rigid adherence to a prior award would impair the

process of flexibly resolving current or future disputes.") (citation omitted).

The court finds that Phelan acted within the scope of his authority in determining what, if any, preclusive effect was due to Roberts' award under the CBA.  Therefore, the court rejects Plaintiff's claims for relief.

C.    <u>Special Damages</u>

In light of the fact that this court sustained Phelan's denial of punitive damages, it logically follows that special damages are likewise unavailable.  As Phelan correctly explains, because Defendant's failure to pay punitive damages was not a breach of the CBA, "the [Union's] cost to have the Mine Committee process its grievance was therefore not directly caused by a breach of the Agreement and consequently could not be considered special damages which would entitle [the Union] to be compensated for those costs."  Doc. 1 at 31-32. Therefore, Plaintiff's request for special damages is denied also.

## IV.  CONCLUSION

On these facts, Plaintiff cannot show that Phelan's denying Plaintiffs punitive and special damages was irrational, failed to draw itself from the essence of the CBA, or that Phelan exceeded the scope of his authority.  Rather, his award was a reasonable interpretation of the CBA.  Therefore, Defendant's motion for summary judgment is GRANTED, doc. 23, and Plaintiffs' motion for summary

judgment is DENIED, doc. 21.

Done the 30th day of June, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE